THE STATE v. WEATHERMAN, Appellant.

Division Two, March 5, 1907.

1. **GRAND LARCENY: Consent: Erroneous Instruction: Reading Instructions Together.** An instruction which defines grand larceny as "the wrongfully and fraudulently taking the property of another and converting the same to his own use," is erroneous, since it omits the chief ingredient of grand larceny, that is, the felonious intent to convert the property to defendant's use without the consent of the owner. And the instructions on grand larceny when considered together, as it is held should not be done in this case, do not properly define the offense.

2. **ACCOMPLICE: Cautionary Instruction: No Request.** If defendant desired a cautionary instruction as to the testimony of an accomplice, he should have requested it or called the court's attention to its failure to instruct upon that particular feature of the case. A request to the court to instruct on all the law of the case does not raise the point.

Appeal from Christian Circuit Court.—*Hon. John T. Moore,* Judge.

REVERSED AND REMANDED.

*Walter A. Long* and *J. J. Gideon* for appellant.

(1)   The court did not correctly define grand larceny in any instruction given in the case.   If the defendant did not take the steer with intent of making it his own property and to permanently deprive the

owner of the same, he would not be guilty of larceny, and that question should have been submitted to the jury. State v. Luttrell and Proffit, 170 Mo. 13; State v. Gray, 37 Mo. 463; State v. Shermer, 55 Mo. 83; State v. Ware, 62 Mo. 602; State v. Moore, 101 Mo. 316; State v. Lackland, 136 Mo. 26. (2) It was the duty of the court, under the written request filed by defendant requesting the court to instruct the jury upon all the issues in the case, to have told the jury in an instruction that Keets Weatherman was an accomplice of the defendant and while they had a right to convict the defendant upon the uncorroborated evidence of an accomplice, if they believed he swore the truth, yet it was their duty to receive such testimony with great caution in weighing such evidence. State v. Walker, 98 Mo. 95; State v. Harkins, 100 Mo. 666; State v. Jones, 64 Mo. 391; State v. Tobie, 141 Mo. 547; State v. Reed, 141 Mo. 546; State v. Sprague, 149 Mo. 409.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

The State's instructions were fair and full, and defendant has no ground for complaint of any one of them. They describe the crime of larceny, and also explained to the jury such matters as reasonable doubt, the weight to be given the evidence of the defendant, etc. As this court has often said, "the instructions must be read and considered together." State v. Walker, 92 S. W. 662; State v. Riney, 137 Mo. 105. Similar instructions have been approved in cattle-stealing cases. State v. Goode, 132 Mo. 114.

BURGESS, J.—Defendant was convicted of grand larceny in the circuit court of Christian county and his punishment fixed at two years' imprisonment in the penitentiary, under an information filed by the prosecuting attorney of said county charging him and Keets

Weatherman and John Weatherman with having, at said county, on the 1st day of August, 1905, stolen a steer of the value of thirty dollars, the personal property of one J. F. Vaughan.

The State's evidence tended to prove that J. F. Vaughan was the owner of a lot of cattle in 1904, which were being herded by one of his employees in Christian county; that this employee became demented and the cattle scattered in various parts of the county. It was something like fifteen months before Mr. Vaughan found the steer and heifer that belonged to him; the steer was worth $35. After making diligent search, Mr. Vaughan found the steer had been at defendant's place. The defendant stated that his brother John, and son, Keets, had taken the steer away and sold it for $30, and that he, the defendant, would like very well to compromise the case. The State's evidence further tended to show that this steer was sold to a man named Collins by the brother and son of the defendant, and that the money was collected by them, and a part of it used to pay off a note of the defendant's at the bank, and the balance taken home and kept in a trunk with the knowledge and consent of defendant. The steer had been running on defendant's place and with the defendant's stock for something like fifteen months.

The defendant testified that this steer had been at his place some time, and that it was taken away by his brother and son, and that his brother said it was Joe Vaughan's steer. The defendant further testified that the morning the steer was taken away, his brother said that it was Vaughan's rope with which he was leading the steer; defendant further testified that he asked his son how much of the money he had spent and learned that it was $10, and that the remainder was left in his possession. The defendant admitted that he never notified Mr. Vaughan, or asked him anything whatever about the steer.

On motion of defendants a severance was granted them, whereupon the defendant was put upon his trial, with the result as stated.

Defendant's first insistence is that the court did not correctly define grand larceny in its instructions. The only instructions given upon this feature of the case are as follows:

"2. Grand larceny, as defined in these instructions, is the wrongfully and fraudulently taking the property of another and converting the same to his own use.

"3. The court instructs the jury that if you find from the evidence that Sam Weatherman, in the county of Christian and State of Missouri, on or about the 1st day of August, 1905, or at any time within three years before the filing of the information, to-wit, August 26, 1905, did wrongfully, fraudulently and feloniously steal, take and carry away a certain steer, the property of Joe Vaughan, with intent to deprive the owner thereof as described in the information, you will find the defendant guilty as charged in the information and assess his punishment at a term in the state penitentiary not less than two years nor more than five years."

That instruction 2 is erroneous is quite clear, as it omits the chief ingredient of grand larceny, that is, the felonious intent to convert the property to his (defendant's) own use, without the consent of the owner.

In State v. Gray, 37 Mo. 463, larceny is defined as "the wrongful or fraudulent taking and carrying away of the personal property of another, from any place, with a felonious intent to convert the same to the taker's use, and make it his own, without the consent of the owner." This definition has never been challenged, but has been many times approved. [State v. Shermer, 55 Mo. 83; State v. Moore, 101 Mo. 316; State v. Lackland, 136 Mo. 26; State v. Rutherford, 152 Mo. 124; State v. Littrell, 170 Mo. 13.]

The leading case in this State upon the subject is
Witt v. State, 9 Mo. 671. In that case an instruction
that "if the jury believe from the evidence that the
horse belonged to Smith, and that the prisoner took
and carried away the horse, without the knowledge and
consent of Smith, with the intention of selling him or
of converting him to his own use, they ought to find him
guilty," was held to be erroneous. SCOTT, J., speak-
ing for the court, said: "The legality of the conviction
must depend on the propriety of the foregoing instruc-
tion. Larceny is defined to be the wrongful taking and
carrying away of the personal goods of anyone from
his possession, with a felonious intent to convert them
to the use of the offender without the consent of the
owner. [East, P. C. 553.] The taking must be done
*animo furandi,* or as the civilians express it, *lucri
causa.* Every felony includes trespass, and every in-
dictment for larceny must have the words *felonice
cepit,* as well as *asportavit.* The felonious intent is the
material ingredient in the offense. . . . . There
must be a felonious intent, and where goods are taken
possession of on a claim of right, although that right
may be unfounded, it is not a felony. . . . . The
prisoner, then, might have done every act supposed by
the instruction of the court without being guilty of a
felony. The instruction defined a trespass, and not a
larceny, and it was error to have told the jury that the
commission of the acts mentioned in it rendered the
prisoner guilty of larceny."

The question, then, is as to whether the error in
this instruction is cured, or the omission therein sup-
plied, by instruction 3, and whether, if both be read
and construed together, as is contended by the State
they should be, they correctly present the law of grand
larceny. We think not. The latter instruction omits
telling the jury, in addition to the other facts required
to be found by them before they could find the defend-

ant guilty, that the taking from the owner was without consent, which was absolutely necessary in order to complete the offense. Unless the taking was without the owner's consent, there was no larceny, one of the ingredients of the offense being wanting. These views find support in many instructions which have been approved by this court, beginning with Witt v. State, supra, down to and including State v. Speritus, 191 Mo. 24; so that, even if both of the instructions be considered together, which we do not think in this case they should be, they do not correctly define the law of grand larceny.

Keets Weatherman, one of the parties informed against as an accomplice of the defendant, testified in behalf of the State, but the court failed to give the usual cautionary instruction as to such testimony, although the defendant asked the court at the time the instructions were read to the jury to instruct upon all the law of the case. But no intimation was given the court by this motion as to what particular points of law had been neglected or overlooked by the court in its instructions, or upon which defendant desired instructions. Defendant now insists that the court should have given the usual cautionary instruction upon the testimony of the accomplice. But, in fairness to the court, the defendant, if he desired such an instruction, should have asked for it, or have called the attention of the court to its failure to instruct upon this feature of the case. [State v. Bond, 191 Mo. 555; State v. McCarver, 194 Mo. 717; State v. West, *infra,* p. 128.]

Because of the erroneous instruction alluded to, the judgment is reversed and the cause remanded.

All concur.