[Crim. No. 1333.  Second Appellate District, Division Two.—September 11, 1926.]

THE PEOPLE, Respondent, v. JOHN J. CASEY, Appellant.

[1] CRIMINAL LAW—VIOLATIONS OF SECTIONS 286 AND 288A, PENAL CODE—ALIBI—EVIDENCE—APPEAL.—In a prosecution for violations of sections 286 and 288a of the Penal Code, it was the jury's exclusive province to determine the truth or falsity of conflicting stories on the question of defendant's alibi, and, having done so, the appellate court is not authorized to disturb their verdict upon the ground of improbability or insufficiency of the evidence.

[2] ID.—STATEMENT MADE TO POLICE—EVIDENCE—SECTION 2052, CODE
OF CIVIL PROCEDURE.—In such prosecution, the trial court did not
err in permitting the district attorney to interrogate the defend-
ant during cross-examination as to whether or not he was asked
questions and gave answers contained in a signed statement made
to the police prior to the trial, without requiring that it be
shown to the defendant as provided by section 2052 of the Code
of Civil Procedure.

[3] ID.—ACCOMPLICE—CORROBORATION—INSTRUCTION.—In such prosecu-
tion, the trial court properly refused defendant's requested in-
struction to the effect that the jury is advised by the court to
acquit the defendant, where there were many circumstances cor-
roborating the testimony of the accomplices, and defendant's
asking such instruction was based on the ground that the ac-
complices were not corroborated.

[4] ID. — ACCOMPLICES — EVIDENCE. — In such prosecution, it is held
that the evidence shows that the prosecuting witnesses—two young
men seventeen and nineteen years of age, respectively, were accom-
plices.

[5] ID.—INSTRUCTIONS — FAILURE TO REQUEST — EFFECT OF. — In such
prosecution, the trial court did not err in failing to define an
accomplice and to charge that a conviction could not be had
without corroboration, where it was not requested by defendant
to so instruct.

[6] ID.—REQUESTED INSTRUCTIONS COVERED BY OTHERS — ABSENCE OF
ERROR.—In such prosecution, the trial court did not err in re-
fusing to give requested instructions that a defendant is never
required or expected to prove his innocence but that the burden
rests upon the prosecution to prove every essential fact constitut-
ing an offense; that the presumption of innocence attends the
defendant throughout the trial, and that in the light of this
presumption if the jury in weighing and considering all the facts
and circumstances could reconcile them upon a reasonable hypothe-
sis consistent with innocence, they should do so and acquit the
defendant, where the court gave an instruction which covered
the rules embraced in the requested instructions.

[7] ID.—FACT—OPINION—INSTRUCTIONS.—In such prosecution, the de-
fendant cannot be heard to complain of a given instruction by
which it was intended to convey the meaning that while certain
rules of law had been stated, the court did not wish to be under-
stood as expressing any opinion upon matters of fact.

[8] ID.—ARGUMENT—REPORTING OF—CONSTRUCTION OF SECTION 269,
CODE OF CIVIL PROCEDURE.—It was the intention of the framers

---

5.   See 8 Cal. Jur. 311.

6.   See 8 Cal. Jur. 314; 14 R. C. L. 751.

of section 269 of the Code of Civil Procedure that in taking down the testimony it should be the duty of the reporter to also take the objections and rulings thereon, but that if it be desired that he take arraignments, or arguments, counsel should make a request therefor; and the mere fact that arguments were not taken is not reversible error.

[9] ID. — MODIFICATION OF RECORD — ABSENCE OF PREJUDICE.—In such prosecution, the fact that the trial judge modified with pen the order for the record upon appeal did not prejudice defendant's rights.

[10] ID. — ABSENCE OF REPORTER DURING ARGUMENT OF DISTRICT ATTORNEY—ACQUIESCENCE OF DEFENDANT—APPEAL.—In such prosecution, the defendant cannot be heard to complain on appeal of the absence of the reporter during the argument of the district attorney to the jury, where the defendant acquiesced in the reporter's absence.   (Opinion of supreme court, on denial of hearing.)

(1) 16 C. J., p. 931, n. 5, 8; 17 C. J., p. 264, n. 89, p. 267, n. 99, p. 270, n. 19.   (2) 40 Cyc., p. 2718, n. 7.   (3) 16 C. J., p. 937, n. 89. (4) 16 C. J., p. 677, n. 61.   (5) 16 C. J., p. 1001, n. 98, p. 1057, n. 24.   (6) 16 C. J., p. 984, n. 41, p. 986, n. 70.   (7) 16 C. J., p. 941, n. 62, p. 1047, n. 65.   (8) 17 C. J., p. 289, n. 91 New. (9) 17 C. J., p. 357, n. 31.   (10) 17 C. J., p. 209, n. 85.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Edwin F. Hahn, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Wm. T. Kendrick, Jr., for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and James S. Howie for Respondent.

CRAIG, J.—The appellant in this case was charged by three counts of an information with having on the third day of May, 1925, committed the infamous crimes prescribed by sections 286 and 288a of the Penal Code upon the persons of two young men.   He was convicted upon each count and appeals from the order denying a motion for a new trial and from the judgments entered accordingly.

The testimony of the two young men was to the effect that as they left the Odd Fellows' hall at El Monte at about midnight on the date in question the defendant called them to

an automobile in which he was seated and proposed that they accompany him to a place where he asserted he expected to meet some girls. The two men entered the car and occupied the front seat to the right of the defendant. They drove easterly, out of El Monte, then turned back, passing through the town and continued until they arrived at a lonely section of the country, where the defendant stopped, turned off the lights and began to feel the legs of the man sitting next to him. The latter testified that he objected and his partner, who sat on the outside, testified, "I put up an objection, and he told me to keep my mouth shut," that the defendant took an automatic revolver from his coat pocket, tapped him with it and told him to "keep quiet." Casey then proceeded to commit the offense with which he was charged under section 288a. Almost immediately thereafter the two young men exchanged places in the front seat, and the same offense was committed upon the other. Following this, one of them transferred with the defendant to the rear seat, where the latter violated section 286, while the partner of the victim of this offense remained in the front seat. All three later alighted from the machine, and one of the defendant's passengers noted the license number of the car upon a paper, which was offered in evidence at the trial. On the following day one of the young men reported the occurrences to a watchman at El Monte, giving him the automobile number, and appellant's arrest resulted.

[1] The principal defense during the trial was an alleged alibi, the defendant positively denying that he had ever seen either of the boys previously to May 9, 1925, when they appeared at the police station. He swore that he was at home all night on the date of the offense and his mother corroborated him in this. Appellant had previously signed a typewritten statement which he made to the assistant chief of police, wherein he maintained that he was at the Hollywood Military Academy from 9 P. M. to 2 A. M. of the same night with Police Captain Hall. Captain Hall testified that the defendant was not at the academy with him, and each of the men first herein mentioned positively identified him as having been at El Monte. The license number taken by one of them corresponded with that of appellant's machine. The jury's exclusive province was to determine as to the truth or falsity of these conflicting stories, and,

having done so, we are not authorized to disturb their verdict upon the ground of improbability or insufficiency of the evidence.

[2] It is insisted that prejudicial error was committed by the trial court in permitting the district attorney to interrogate the defendant during cross-examination as to whether or not he was asked questions and gave answers contained in the signed statement above mentioned, without requiring that it be shown to the defendant as provided by section 2052 of the Code of Civil Procedure. Appellant asserts that in *People* v. *Orosco,* 73 Cal. App. 580 [239 Pac. 82], the lower court was reversed "for this very error, among others." However, the statement discussed in that case consisted of testimony taken before a coroner's jury, and during the course of the opinion it was said: "It has been held in one case that a statement made by one to the police and by the latter reduced to writing is not a statement 'in writing' under the section, of the party who makes the statement. (*People* v. *Glaze,* 139 Cal. 154 [72 Pac. 965]. See, also, *People* v. *Talman,* 26 Cal. App. 348 [146 Pac. 1063].)" *People* v. *Orosco,* therefore, sustains the ruling below.

[3] The following instruction was requested by the defendant and refused: "You are advised by the court to acquit the defendant, John J. Casey." Appellant's contention here is that the only evidence of the commission of the offense is to be found in the testimony of the two men, and that they were accomplices, and were not corroborated. The respondent insists that there is no evidence in the record tending to support this theory. There were many corroborating circumstances, including the defendant's own contradictory statements as to his whereabouts on the night of May 2–3, 1925, his identification by one witness not an accomplice, and the license number of the car. We think that this instruction was properly refused.

Appellant next insists that while the court instructed the jury as to what constitutes corroboration, it erred in failing to define an accomplice and to charge that a conviction could not be had without corroboration, although not requested to so instruct. [4] Respondent also insists that there is no evidence amounting to even a suggestion that the two boys

were accomplices of the defendant, but that they were shown to have submitted through fear and coercion.

We think that the uncontradicted testimony of the prosecuting witnesses upon direct examination alone strongly tends to show that they were at least not unwilling participants. It seems unconceivable that two young men seventeen and nineteen years of age, respectively, and one of them weighing nearly 150 pounds, would be incapable of protecting themselves against the indecent advancements of one lone companion under the circumstances disclosed by the record in this case. It appears that one of them said "Don't" and "not to do it"; that the defendant told him to "keep still," to which he replied that he could take care of himself, whereupon Casey drew an automatic revolver, tapped him with it and returned the gun to his pocket. There was no physical resistance or further remonstrance on the part of either. The older boy, who sat farthest from the defendant, was asked what occurred "after he finished with John," and the significant response was, "Why, John and I exchanged places. . . . John raised up and I slid over"; that the defendant afterward asked the witness to transfer to the rear seat, and that when the latter refused to do so, "he told John to go, and he went." One of the boys testified that he knew early during the ride that Casey was a degenerate, and "asked him what was coming off, . . . what he was trying to do"; that Casey then said, "You keep still." The witness testified that he was afraid to resist, and that when the defendant produced a revolver, "that scared me more than ever; then I knew I couldn't do anything, so I just had to go ahead and let him do what he wanted." It was admitted, however, that after the meek display of the revolver there was no further mention of firearms or of their use. During the ride these young men drank liquor from a bottle carried by the defendant, but they were not intoxicated; there was no attempted claim that either of them was physically unable to defend himself against the disgraceful advances of a proven degenerate. As we have seen, they accepted a ride in the middle of the night, in quest of two mythical girls, with an entire stranger, and became parties to one of the most repulsive degradations known to humanity.

Though it be conceded, as argued by respondent, that the victim of a holdup is not an accomplice to the robber, yet it has been held that a prosecutrix of legal age of consent, who does consent, is an accomplice to an incestuous intercourse. (*People* v. *Stratton,* 141 Cal. 604 [75 Pac. 166]; *People* v. *Letoile,* 31 Cal. App. 166 [156 Pac. 1057].) And that a boy sixteen years of age who knowingly participates in an infamous crime against nature is an accomplice. (*People* v. *Robbins,* 171 Cal. 466 [154 Pac. 317].) In view of the record presented in this case, we are led to the inevitable conclusion that the prosecuting witnesses were accomplices.

The defendant requested and the court gave the following instruction: "The corroborating evidence required under the law must in itself and without the aid of the testimony of the accomplice tend in some degree to connect the defendant with the commission of the offense. It need not be sufficient to establish guilt, but it must tend, in some degree, at least to establish the commission of the offense, and to implicate the defendant therein."

[5] No other instruction was requested or given upon the subject of accomplices. It is here contended by appellant that it was the duty of the trial court to prepare and give, of its own motion, full instructions defining an accomplice and stating the law as to corroboration. It has been held that if the defendant deems it proper or advisable for the protection of his right that such instructions be given, it is his duty to request them. (*People* v. *Yates,* 71 Cal. App. 788 [236 Pac. 185].) And this is apparently the consensus of rulings in other states. (*Porath* v. *State,* 90 Wis. 527 [48 Am. St. Rep. 954, 63 N. W. 1061]; *Carroll* v. *State,* 45 Ark. 539; *Robinson* v. *State,* 84 Ga. 674 [11 S. E. 544]; *Motsenbocker* v. *State* (Okl. Cr.), 233 Pac. 487; *State* v. *Miller,* 83 Kan. 410 [111 Pac. 437]; *State* v. *Weatherman,* 202 Mo. 6 [100 S. W. 482]; *Geomann* v. *State,* 94 Neb. 582 [143 N. W. 800]; *State* v. *Glass,* 29 N. D. 620 [151 N. W. 229]; *State* v. *Ham,* 24 S. D. 639 [Ann. Cas. 1912A, 1070, 124 N. W. 955]; *State* v. *Grant,* 26 Idaho, 189 [140 Pac. 959].)

[6] It is next contended that the trial court erred in refusing to give requested instructions that a defendant is never required or expected to prove his innocence, but that

the burden rests upon the prosecution to prove every essential fact constituting an offense; that the presumption of innocence attends the defendant throughout the trial, and that in the light of this presumption if the jury in weighing and considering all the facts and circumstances could reconcile them upon a reasonable hypothesis consistent with innocence, they should do so and acquit the defendant. The court gave an instruction which was approved in *People* v. *Lewandowski*, 143 Cal. 574 [77 Pac. 467], and which embraced in different language the foregoing rules. Appellant complains of a portion of the latter instruction, but, taken as a whole, we think it was proper, and having covered the requested charges, it was not necessary to give them again. (*People* v. *Dillon*, 68 Cal. App. 457 [229 Pac. 974].)

[7] Again, it is complained that after giving certain requested instructions the jury were charged generally that the fact that particular rules of law had been stated should not be taken as an indication that they were necessarily applicable to the cause on trial, or that the *court* considered them necessarily applicable. It is asserted that this amounted to a charge that while the jury had been instructed upon questions of alibi, good character of the defendant, etc., they might disregard such instructions. We do not so understand the statements of which complaint is made. Although more apt language might well have been used, it appears that the meaning intended to be conveyed was merely this: That while certain rules of law had been stated, the court did not wish to be understood as expressing any opinion upon matters of fact. It is obvious that whether or not legal principles announced are applicable to the facts of a particular case will often depend upon the jury's interpretation of the evidence. Such an instruction was appropriate in the instant case. One of similar import was approved in *People* v. *Clark*, 70 Cal. App. 531 [233 Pac. 980].

The appellant urgently insists that he was denied due process of law. As a basis for this claim he calls attention to the fact, which is admitted, that the official reporter was absent from the courtroom during the district attorney's argument to the jury. The reporter took down all the other proceedings, but when the evidence was closed the court stated to the reporter, to use the language of the judge presiding, "that it would not be necessary for him to take

the argument unless requested by the district attorney or the attorney for the defendant, and no such request had been presented, and I excused him with the understanding that if the request should come in at any time that he would come at once. That is what was said, and is always said." Appellant's counsel objected to certain remarks of the district attorney during argument, and such objection was overruled, but neither the remarks, objections, nor rulings thereon appear in the record. It is not contended that the district attorney's remarks were damaging to the defendant, that the court's ruling was erronous, nor is it attempted to be shown how appellant was prejudiced by the absence of the reporter. It is simply said that the reporter left the courtroom without the knowledge of counsel and that this constituted reversible error.

Respondent argues that statements of counsel to the jury need not be reported unless counsel or the court so request. Section 269 of the Code of Civil Procedure provides that: "Such reporter . . . must, at the request of either party, or of the court in a civil action or proceeding, and on the order of the court, the district attorney, or the attorney for defendant in a criminal action or proceeding, take down in shorthand all the testimony, the objections made, the rulings of the court, the exceptions taken, all arraignments, pleas and sentences of defendants in criminal cases, the arguments of the prosecuting attorney to the jury, and all statements and remarks made and oral instructions given by the judge; . . . "

It does not appear that either counsel or the court ordered the reporter to take down any of the proceedings in this case. However, we are not cited to, nor are we aware of, any authority in this state holding that should such an order be made for the reporting of the testimony it would automatically require a stenographic record of all the other steps enumerated in the statute. In *Koyer* v. *Willmon,* 12 Cal. App. 87, 92 [106 Pac. 599], it was held that under the same circumstances it was not prejudicial error to excuse the reporter before oral argument in a civil action. If appellant's contention be accepted that an order to report all the testimony requires that the reporter further take down the other proceedings, including arguments of the prosecuting attorney to the jury, it would appear from the

wording of section 269 of the Code of Civil Procedure that it has no application to civil actions, except in cases wherein the prosecuting attorney is interested and takes part. Yet obviously such a construction would be contrary to the intention of the legislature.

In *Lamm* v. *State,* 4 Okl. Cr. 641 [111 Pac. 1002], there was presented for construction a statute which provided that shorthand reporters should when required by a party or attorney take down "all the proceedings upon the trial of any cause, as well as statements of counsel, the witnesses or the court," and that upon request of counsel for a reporter the failure or refusal of the court to order one would constitute reversible error. It appears that a motion was there made for an order that the reporter take down all proceedings, including statements of counsel and the court, made in the presence and hearing of the jury. The court ruled that the reporter must take all that occurred during the trial *except* arguments of counsel, and that the attorney for either side would be entitled to have taken any statement made in argument to which either of them should desire to object. Upon appeal such order was squarely presented for consideration, and was held to be proper, the court saying: "We think that this order of the court was all that the defendants had a right to demand under the statute above quoted. . . . We think the object of this statute was simply to enable the parties to a trial to secure a record upon appeal, and that it does not force the judge to have the stenographer take down any statement that would not be subject to review upon appeal. It does not mean that the court stenographer should be required to take down the entire speeches of counsel for both sides of the case where no objection is made to such speeches. It gives the counsel the right to have any given statement to which they object and which they desire to incorporate in a case—made taken down by the stenographer, and, upon refusal of the court to have this done, reversible error is committed, without regard to the merits thereof."

In *Miller* v. *State,* 9 Okl. Cr. 255 [L. R. A. 1915A, 1088, 131 Pac. 717], and *Walker* v. *State,* 6 Okl. Cr. 370 [118 Pac. 1005], it was further held that under such statute improper remarks of counsel could not be presented for consideration upon appeal by affidavit or otherwise than phono-

graphic report, unless it were shown that a request for reporter had been made and was refused by the court. In the case last cited, however, it was said: "But even if affidavits and oral testimony were admissible, for the purpose of showing that improper arguments were made by the attorney for the state in his closing argument, we could not consider the question here presented, because it is not incorporated in the petition in error, and therefore is not properly presented for our determination."

[8] We think that after careful consideration of the point presented here, and of the foregoing authorities, that it was the intention of the framers of section 269 of the Code of Civil Procedure that in taking down the testimony it should be the duty of the reporter to also take objections and rulings thereon, but that if it be desired that he take arraignments, or arguments, counsel should make a request therefor. Hence, the mere fact that arguments were not here taken is not reversible error, and since no objectionable statement of the district attorney is presented by the record, we are unable to say that the defendant was prejudiced thereby.

[9] Appellant argues that the record was "mutilated" by the trial judge, in that the order for the record upon appeal was modified by him with pen. There appears to be nothing in this fact that could have prejudiced appellant's rights. The request specified, among other things, the opening and closing arguments of counsel, etc., which the court struck out by drawing lines through the words, but thereafter noted on the margin that this was an inadvertence, and prepared an order of its own for such matters as were available. The record contains such request, the court's order, and all proceedings except argument, and objections and rulings during argument, which we have already discussed. In spite of the mutilation, the full contents of the paper mutilated is in the record and has served every purpose that it could have served appellant had it remained untouched by the court. We can find no way in which appellant was prejudiced by the error.

The judgment and order appealed from are affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 8, 1926, and the following opinion then rendered thereon:

THE COURT.—Appellant's petition to have the above-entitled cause heard and determined by this court after judgment in the district court of appeal is denied.

However, we are not in accord with the intimation in the opinion that when the official phonographic reporter was actually present at and during the trial it must affirmatively appear that the defendant requested that the arguments of the prosecuting attorney to the jury be taken down before the defendant will be permitted to assign as error anything occurring during the arguments and of which no report was made. **[10]** But in the case at bar the evidence sufficiently shows that the defendant acquiesced in the absence of the reporter during the argument of the prosecuting attorney, and should not now be heard to complain.