PAUL C. MULLINS, APPELLANT, v. STATE OF NEBRASKA, APPELLEE.

20 N. W. 2d 385

FILED NOVEMBER 2, 1945. No. 31983.

*Hubka & Hubka*, for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *C. S. Beck,* for defendant in error.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This record presents a proceeding in error from the district court for Pawnee County, prosecuted by Paul C. Mullins who will be hereinafter referred to as the defendant.

An information was filed under section 69-109, R. S. 1943, on February 22, 1945. The information charges that the defendant on April 21, 1944, in the county of Pawnee and state of Nebraska, mortgaged to the State Bank of DuBois, Nebraska personal property, 30 Hereford heifers, and on or about October 10, 1944, during the existence of the lien of said mortgage, the defendant unlawfully and feloniously and without having first procured the consent in writing of the State Bank of DuBois, sold 23 head of the cattle. The case was tried to a jury with the result that the defendant was convicted of the charge filed against him, and sentenced. A motion for new trial was filed and overruled.

The principle assignment of error is that the verdict is not sustained by sufficient evidence.

The record discloses that on April 21, 1944, the defendant borrowed from the State Bank of DuBois, Nebraska, the sum of $2,400, executing a note securing the same by a chattel mortgage on 30 head of Hereford cattle. On October 10, 1944, the defendant sold the cattle to one Buman, receiving therefor a check on the State Bank of DuBois for $1,802.90, signed by Buman. The defendant took the check to the bank and inquired of an employee thereof whether or not he would be permitted to use part of the money to accompany Buman to Texas, the purpose being to purchase some Jersey cattle. The employee informed him that that was a matter for the president of the bank to determine. The money was placed on deposit to the credit of the defendant where it remained for approximately 30 days. On or about November 9, 1944, Buman sold the cattle, together with one two-year old bull, back to the defendant. The defendant paid $500 and Buman carried back $1,500 secured by a note and chattel mortgage on the cattle, the full amount not being paid but with which we are concerned only insofar as the transaction affects the State Bank of DuBois and its mortgage on the chattels.

The president of the bank testified he was acquainted with the defendant and had been for some time, and the bank had made loans to the defendant; the note and mortgage given by the defendant, which the bank held, was for the purchase of cattle. He knew that the defendant had sold some of the cattle in the fall of 1944. He did not give written consent as president of the bank to the defendant to sell the cattle covered by the mortgage. Prior to February 19, 1945, the president of the bank and the defendant concluded that the bank should take possession of the 23 head of cattle which the bank did, and after obtaining possession of the cattle, shipped them to St. Joseph, Missouri where they were sold, the bank receiving the proceeds of the sale of cattle, which appeared to be the full value of the mortgaged chattels, and endorsing the amount so received on the note. The bank is not the complainant in this case.

The foregoing constitutes the material evidence as disclosed by the record upon which the defendant was convicted and sentenced.

In the case of *State v. Butcher,* 104 Neb. 380, 177 N. W. 184, this court said: "The doing of the inhibited act constitutes the crime. The statute was enacted to prevent the fraudulent transfer of mortgaged chattel property.

"An examination of the history of this statute to its present form clearly indicates the purpose of the legislature to be the protection of the mortgagee in his security, and to permit him to have the full value of the chattel property applied to the mortgage debt. * * * Instances can well be perceived in which a mortgagor, acting in good faith and selling the mortgaged property without written consent, might find himself within the inhibited letter of the law, and yet his act in disposing of the property may not have resulted in any injury or damage to the mortgagee. Thus, if on oral consent the mortgagor sold the property at its fair value and immediately turned the proceeds of the sale to the mortgagee, it would seem that the mortgagee was not deprived of any right, the purpose of the mortgage being to secure the mortgage debt to the extent of the value of the

property, and the law, so far as its purpose was concerned, would be completely vindicated. The state would have no purpose in a prosecution to sustain a mere technical violation of the law, the result of which has harmed no one in his property, or the good morals of the citizens of the state. Under this statute the state makes out a *prima facie* case when it has established beyond a reasonable doubt the execution and delivery of a valid chattel mortgage, and the sale of the chattel mortgaged property during its life without the written consent of the mortgagee. But, if it is shown by the mortgagor that the full value of the mortgaged chattel has been turned over to the mortgagee in payment in whole or in part of the mortgage debt, the defense thus established would be complete."

In *Fiehn v. State,* 124 Neb. 16, 245 N. W. 6, the court quoted with approval the following from *State v. Butcher, supra:*

"In a prosecution under said section, the accused may show as a defense that the full value of the mortgaged chattel has been turned over to the mortgagee in payment in whole or in part of the mortgage debt, or that the mortgage debt has been paid."

"In a prosecution for the unlawful sale of mortgaged property without the written consent of the mortgagee, oral consent of such mortgagee to the sale of the mortgaged chattels, coupled with payment of the value of the property, is a defense." *Knapp v. State,* 139 Neb. 810, 299 N. W. 223, citing *State v. Butcher, supra, Fiehn v. State, supra.*

In view of the defense pronounced in the foregoing heretofore cited authorities, the defense in the case at bar is complete and absolute. The evidence is not in dispute that the mortgagee received the full value of the mortgaged chattels and the proceeds therefrom and applied the same on the mortgage indebtedness. It is further clear from the evidence that the mortgagee bank was acquainted with all of the transactions with reference to the sale and disposition of the chattels upon which it held a mortgage. Therefore, the judgment of the district court is reversed with di-

rections to the district court to vacate the verdict and sentence, to dismiss the cause and to discharge the defendant. REVERSED WITH DIRECTIONS TO DISMISS.