ALBERT SHAFFER v. STATE OF NEBRASKA.

FILED APRIL 22, 1932.   No. 28240.

*Joseph E. Daly,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Homer L. Kyle, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, DAY and PAINE, JJ., and LOVEL S. HASTINGS, District Judge.

ROSE, J.

In a prosecution by the state in the district court for Dodge county, it was charged in three counts of the information that Albert Shaffer, defendant, June 12, 1931, stole two heifer calves from Rickles H. Mintken, two heifer calves from Miller Andersen and one heifer calf from Ray Henkens. Defendant was accused of the thefts under the cattle-stealing statute, a valid enactment defining an independent substantive crime and providing a penalty therefor. Comp. St. 1929, sec. 28-515; *Granger v. State,* 52 Neb. 352; *In re Granger,* 56 Neb. 260. Upon a trial the jury found defendant guilty on all three counts and on each he was sentenced to serve a term of four years in the penitentiary, the terms to run concurrently. As plaintiff in error defendant presented for review the record of his convictions.

The sufficiency of the evidence to sustain the convictions is challenged by defendant who did not testify in his own defense. The point is without merit as shown by an examination of all the testimony which was adduced by the state in unnecessary detail. Each owner testified his live stock was taken from his premises in Dodge county at night, June 12, 1931, without his permission. Mintken and Andersen testified they identified and recovered their calves June 13, 1931, and the evidence shows that Henkens identified his calf and recovered it June 14, 1931. Defendant resided at Hooper in Dodge county and owned

and operated an inclosed motor truck with doors in the rear. He sometimes delivered his own live stock at the sales pavilion in Waterloo, Douglas county. Defendant's employee, Jerry Mack, who confessed to participation in the thefts, testified to the details of the felonious acts charged. The substance of Mack's story is that the truck was stopped in the highway at the premises of each of the persons robbed after 10 o'clock at night, June 12, 1931. The calves were led to the rear of the truck and lifted into it by defendant and Mack. With both men in the truck defendant drove to Waterloo where four of the calves, about 2 o'clock the next morning, were unloaded in a pen at the sales pavilion without anything to identify the owners. Defendant did not know who owned the fifth stolen calf or whether the owner would be likely to attend the sale later in the day, and it was taken to Hooper in the truck, unloaded and there tied near the house of a resident with the latter's permission, where the owner found it. The facts outlined were detailed on the witness-stand by Mack, an active participant in the thefts, and are uncontradicted. In addition, Jay Herrington, manager of the sales pavilion, testified defendant telephoned June 12, 1931, that he might have calves there for sale the next day; that Herrington found four unlabeled calves in a pen early June 13, 1931, and tagged them "somebody;" that defendant appeared in the afternoon, asked witness not to sell the four calves in the name of defendant, giving as a reason his wife would be after him for money, if she knew of the sale. Some of the details related by Mack were corroborated by disinterested witnesses. Circumstances supported his testimony. There is no substantial ground for the contention that the evidence is insufficient to sustain the convictions.

In an assignment of error it is asserted that there was a fatal irregularity in an attempt by the justice of the peace, who acted as examining magistrate, to bind defendant over to the district court. Defendant was arrested in less than 24 hours after the calves were stolen. A single complaint charging both him and Mack with the thefts

was presented to the justice of the peace June 16, 1931. Mack pleaded guilty June 17, 1931, and was then bound over to the district court where a transcript of the proceedings below was docketed the same day. The original complaint however remained in the hands of the justice of the peace. Before him defendant appeared in person with counsel June 18, 1931. Defendant then and there stipulated with the county attorney that he would make no objection to arraignment on the original complaint, pleaded not guilty thereto and was bound over to the district court. This is shown by the transcript of the justice of the peace. In addition, defendant promptly appeared in the district court and demanded an immediate trial. The irregularity and the making of a new complaint or the refiling of the original one were thus waived. The district court acquired jurisdiction. 16 C. J. 296; *Lewis v. State,* 15 Neb. 89.

Defendant insisted further that the district court erred in overruling an application by him to be discharged from custody on the ground he did not have a trial within the time required by law. In this connection he invoked the statute providing, among other things: "Any person held in jail charged with an indictable offense shall be discharged if he be not indicted at the term of court at which he is held to answer." Comp. St. 1929, sec. 29-1201. This provision applies also to a prosecution by information. *Nichols v. State,* 109 Neb. 335. The record does not affirmatively show a delay entitling defendant to his liberty. He contends he was entitled to a trial before the jury in attendance at the April term of the district court. That term began April 13, 1931, and expired September 20, 1931. The jury were in attendance June 15, 1931, and as late as June 22, 1931, when they were excused. Other dates and events follow: June 18, 1931, defendant bound over to the district court at the April term; June 20, 1931, demand for immediate trial at April term; July 1, 1931, information filed in district court; September 21, 1931, next or September term opened, at which defendant was brought to trial. The record shows that

the jury in attendance at the April term were excused June 22, 1931—four days after defendant was bound over to the district court and two days after he demanded an immediate trial. The information was filed during the April term within the statutory period, but the law did not grant defendant a right to a trial thereat. The record fails to show he was entitled to a release from custody or error in the order overruling his application therefor. A subsequent motion to quash the information on the same ground was properly overruled.

Defendant's main argument was directed to the assignment that the district court erred in overruling a plea of former jeopardy and a plea in bar. The position taken by defendant on these pleas does not seem to be tenable. The first jury were impaneled at the September term, September 21, 1931, and the cause was submitted to them for their verdict the next day. After deliberating more than 24 hours the district court discharged them on the ground they were unable to agree. Defendant contends that the jury were discharged without cause at a time when defendant and his counsel were absent from court. To make error in a trial available for a reversal in the appellate court it should be called to the attention of the district court and be affirmatively shown on the record for review. How long a jury shall be kept together before being discharged for failure to agree on a verdict depends largely on the discretion of the trial court. *Russell v. State,* 66 Neb. 497; *Jahnke v. State,* 68 Neb. 154. The record in the case at bar does not affirmatively show error in the order discharging the jury before agreeing upon a verdict at the former trial, but does show defendant requested their discharge for that reason 12 hours earlier. The plea of defendant that the discharge of the first jury amounted to an acquittal was controverted by the state. Affidavits relating to the issue that defendant and his counsel were absent when the jury were discharged are found in the transcript, but are not in the bill of exceptions and consequently cannot be considered in the appellate court. In a criminal prosecution a proper order dis-

charging a jury, if unable to agree on a verdict, and requiring a retrial does not violate the constitutional provision that a person shall not "be twice put in jeopardy for the same offense." *Sutter v. State*, 105 Neb. 144. Moreover, the record fails to show that defendant had withdrawn the plea of not guilty when the plea of former jeopardy was overruled. In *Davis v. State*, 51 Neb. 301, the court said:

"There can never properly be more than one issue before the court in a criminal case at one time, and so long as the plea of not guilty remains on the record, a plea in bar is improper, and the state is under no necessity of replying or demurring to such plea, and the court, on its own motion, may disregard it."

For reasons stated the assignments of error relating to these pleas are overruled.

Complaint is also made because the county attorney was permitted to indorse on the information during the trial the names of additional witnesses. This permission was within judicial discretion which was not shown to have been abused.

Rulings in giving and refusing instructions are also assigned as errors, but prejudice to defendant in these and other respects has not been found.

AFFIRMED.